# In the United States Court of Federal Claims

No. 19-1390C

(Filed: May 5, 2020)

```
**************************************
                                    *
JKB SOLUTIONS AND SERVICES, LLC,    *
                                    *
                                    *
                   Plaintiff,       *
                                    *
v.                                  *
                                    *
THE UNITED STATES,                  *
                                    *
                   Defendant.       *
                                    *
**************************************
```

Standing; Motion to Dismiss; Failure to State a Claim; Contract Dispute Act; RCFC 12(b)(6); Indefinite Delivery/ Indefinite Quantity (IDIQ) Contract; Firm Fixed Price; Task Orders; Breach of Contract.

*William A. Lascara*, with whom was *Bryan S. Peeples*, Pender & Coward, P.C., Virginia Beach, Virginia, for Plaintiff JKB Solutions and Services, LLC.

*Amanda L. Tantum*, with whom were *Joseph H. Hunt*, Assistant Attorney General, *Robert E. Kirschman, Jr.*, Director, *Steven J. Gillingham*, Assistant Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, D.C., for Defendant.

## OPINION AND ORDER

WHEELER, Judge.

Before the Court is the Government's motion to dismiss Plaintiff JKB Solutions and Services, LLC's ("JKB") action under Rules 12(b)(1) and (6), or, in the alternative, for summary judgment.[1] This dispute stems from an Indefinite Delivery/Indefinite Quantity ("ID/IQ") contract for instructor services for the Operational Contract Support course, a

---

[1] In its motion to dismiss, the Government argues that JKB's claims for attorney fees should be dismissed for lack of subject matter jurisdiction under 12(b)(1). However, in its reply brief the Government withdrew this argument because JKB "clarified that it only seeks such fees pursuant to the Equal Access to Justice Act." Dkt. No. 17 at 7 n.1.

class developed and managed by the United States Army Logistics University. The three-year contract consisted of three one-year ordering periods. During each ordering period, the Army Contracting Command, New Jersey ("the Army") could request up to 14 classes. The Army ordered and paid for nine courses the first period, thirteen the second period, and eight the third period. On September 11, 2019, JKB brought this action against the Army Contracting Command for its alleged breach of contract. JKB argued that the Army breached its contractual duty when it refused to pay for 14 classes for each ordering period. The Government has moved to dismiss the complaint for failure to state a claim upon which relief may be granted or, in the alternative, for summary judgment. In its motion, the Government argues that the contract's language made clear JKB would only be paid for services that were actually provided. For the reasons stated below, the Court DENIES the Government's motion to dismiss or in the alternative, for summary judgment.

Background

On May 29, 2015, the Army Contracting Command issued a request for proposals seeking DOD contractors to provide classes for the College of Professional Continuing Education at the Army Logistics University. See Compl. ¶¶ 4–5. The solicitation was for a three-year ID/IQ contract divided into one-year "ordering periods." See id. ¶¶ 13–14, 18. During each ordering period the Army could order up to 14 courses. See id. ¶ 14. The Army awarded the contract to JKB, a Virginia-based company and DOD contractor. See id. ¶ 12.

The ID/IQ contract required the Army to place orders through firm-fixed-price task orders. See id. ¶¶ 7–13. Each task order contained several Contract Line Item Numbers ("CLINs") and set forth the type and quantity of services for that period. See Compl. Ex. C–E. The amount funded for "training instructor services" (CLIN 1001) in each task order corresponded with the total price of 14 courses. See id. Ex. C–F. Each period the Government issued a task order listing one "LO" (lot) of training instructor services (CLIN 1001) with a price of $297,360, $303,968, and $310,576 respectively, the equivalent of the total amount funded for that period. See id. For the respective periods the Army paid JKB $106,200, $282,256, and $177,472, the equivalent of the courses JKB actually performed. See id. ¶¶ 36, 54, 78.

The dispute in focus here is whether the Army was financially obligated for 14 classes per year or only those that JKB performed. On June 11, 2018, the Army issued a task order modification to deobligate funds for the unordered courses and close out the first two task orders. Compl. Ex. G. Shortly thereafter, JKB sent a letter to the contracting officer objecting to the modification and including an invoice for what it considered to be the "remaining firm fixed-price balance." Compl. ¶ 59; see also Compl. Ex. H.

On September 28, 2018, JKB sent a claim letter to the contracting officer. See Compl. ¶ 61. The contracting officer denied JKB's request on November 20, 2018. See

Compl. ¶ 64.  JKB sent a second claim letter to the contracting officer on January 6, 2019, reiterating its request for the unpaid classes.  <u>See</u> Compl. ¶ 65.  According to JKB, the contracting officer has yet to issue a final decision.  <u>See</u> Compl. ¶¶ 67–68.  As a result, JKB brought suit in this Court for breach of contract.

Discussion

I.   <u>Motion to Dismiss</u>

   A.   <u>Standard of Review</u>

   For a Rule 12(b)(6) motion, a plaintiff need only assert "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009).  A claim is plausible on its face when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  <u>Id.</u>  Granting a motion under Rule 12(b)(6) is "appropriate only when it is beyond doubt that the plaintiff can prove no set of facts in support of his claim [that] would entitle[] him to relief."  <u>Fireman v. United States</u>, 44 Fed. Cl. 528, 537 (1999) (quoting <u>Ponder v. United States</u>, 117 F.3d 549, 552–53 (Fed. Cir. 1997)).

   B.   <u>The Contract Has Latent Ambiguities</u>

   The Government argues that JKB's complaint should be dismissed for failure to state a claim under Rule 12(b)(6).  The Government makes two arguments as to why JKB fails to state a claim.  First, the Government contends that the plain language of the ID/IQ contract and task orders is unambiguous and only requires the Army to pay for the classes JKB performed.  <u>See</u> Dkt. No. 9 at 22–29; Dkt. No. 17 at 8–9.  As a result, the Government contends that its payments to JKB for the courses performed satisfied the Army's contractual obligations.  Dkt. No. 9 at 22–23.

   Next, the Government argues that even if the task orders are ambiguous, any ambiguity is patent or obvious.  <u>See</u> Dkt. No. 9 at 29–30; Dkt. No. 17 at 14–15.  To the extent any patent ambiguities exist, JKB had a duty to inquire about them.  <u>See</u> Dkt. No. 9 at 29–30.  Therefore, the Government concludes, because JKB failed to inquire as to any ambiguities, it cannot recover under a breach of contract claim.  <u>See</u> <u>id.</u>

   i.   *The Task Orders Are Ambiguous*

   Both JKB and the Government argue that the contract's terms are "clear" and "unambiguous"; however, they disagree on whether the plain language obligates the Government to order 14 courses per ordering period.  <u>See, e.g.</u>, Dkt. No. 12 at 18, Dkt. No. 17 at 7–8.  According to the Government, the task orders are clear when viewed in conjunction with the ID/IQ contract.  While the Government concedes that the amount listed in the task orders for one lot is the price of 14 courses, it nonetheless maintains that

3

the Army is only financially responsible for the classes performed. See Dkt. No. 17 at 10. The Government further argues that the dollar amounts listed in the task orders as "funded" or "obligated" are "irrelevant" to the contract price and represent a maximum the Army may spend. Dkt. No. 9 at 27–28. The Government relies on the contract's clause requiring 14-days' notice of any "changes to curriculum or course schedule" to support its contention that the task orders were merely estimates. See Dkt. No. 9 at 25–26. Moreover, the Government argues that the contract's "guaranteed minimum of $15,000" demonstrates that the Army's liability is not determined by the task orders. See Dkt. No. 9 at 23; Dkt. No. 17 at 9 n.2.

For its part, JKB correctly points out that the Army ordered the courses through firm-fixed price task orders. See Dkt. No. 12 at 21; Compl. Ex. B. JKB maintains that it reasonably interpreted the task orders' one "LO" notation at a price of, for example, $303,968 for year two, as the Government committing to pay for 14 classes. See Compl. ¶ 22. JKB notes that the Government "extensively" relies on Evie's Catering Inc. v. United States, 126 Fed. Cl. 562 (2016), for its theory that the "funded" and "obligated" amounts in the task orders are "funding ceilings." See Dkt. No. 9 at 28; Dkt. No. 12 at 24–25. However, in Evie's Catering, the task order "plainly note[d]…'EST' next to the price" and included itemized spreadsheets reflecting the amount owed, none of which occurred here. Id. at 564–65.

JKB also takes issue with the Government's interpretation of the contract's provisions. First, JKB interprets the 14-day notice requirement to allow the Army to alter the content and timing of the classes but not the quantity ordered. See Dkt. No. 12 at 22–23. Second, in its view, the $15,000 guaranteed minimum is a nominal amount with "no relationship to the quantity that the government was fairly certain to order" as it is significantly less than the $21,240 cost of a single class. See Dkt. No. 12 at 22. In any event, the Ordering Clause, JKB contends, explicitly states that the task orders are the "only" means by which the Government could order courses. See Dkt. No. 12 at 18; Compl. Ex. B at 30. Therefore, JKB concludes that the Government is responsible for the total price in the task orders, i.e., the cost of 14 courses.

The result is a quintessential case of contractual ambiguity because the contract's language is reasonably susceptible to differing interpretations. See CW Gov't Travel, Inc. v. United States, 63 Fed. Cl. 369, 391 (2004). JKB's complaint must include factual allegations that state a claim for relief that is plausible on its face. See Iqbal, 556 U.S. at 678. This, however, does not require JKB to set out in detail the facts upon which its claims are based. See Abraham v. United States, 81 Fed. Cl. 178, 181 (2008) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007)). Accordingly, the Court cannot conclude that the Army's interpretation of the contract and task orders is the only reasonable interpretation as a matter of law, as it must to grant the motion to dismiss.

###### ii.    A Latent Ambiguity Exists

The Government further argues that if there was ambiguity as to how many classes it was ordering, it was a patent ambiguity and JKB had a duty to clarify it. See NVT Techs., Inc. v. United States, 370 F.3d 1153, 1162 (Fed. Cir. 2004). A patent ambiguity is one that is so "obvious, gross, or glaring" that the contractor has a duty to inquire about it at the start. Id. (citation and quotation omitted); see also Jay Cashman, Inc. v. United States, 88 Fed. Cl. 297, 309 (2009). If a contractor fails to inquire into the true meaning of a patent ambiguity, his interpretation, regardless of how reasonable it is, will fail. See Triax Pac., Inc. v. West, 130 F.3d 1469, 1475 (Fed. Cir. 1997); H & M Moving, Inc. v. United States 499 F.2d 660, 617 (Ct. Cl. 1974). A court typically construes ambiguities against the drafter; as a result, "the bar to proving a patent ambiguity is high." LAI Servs., Inc. v. Gates, 573 F.3d 1306, 1316 (Fed. Cir. 2009); see also Record Steel & Constr., Inc. v. United States, 62 Fed. Cl. 508, 517 (2004).

The ambiguities in the contract between JKB and the Army are subtle, not blatant. For example, the second task order requests one lot of training and instructor services at a price of $303,968.00 (the price per class is $21,712). See Compl. ¶¶ 55, 60. Nevertheless, the Government contends that the contract and task orders "made clear" that this was an estimate. See Dkt. No. 9 at 17–18; Dkt. No. 17 at 8–9. This may have been clear to the drafters of the contract and the Army, but their subjective intent does not control. See W. States. Constr. Co. v. United States, 26 Cl. Ct. 818, 826 (1992); Diggins Equip. Corp. v. United States, 17 Cl. Ct. 358, 360 (1989). Indeed, it appears the Government did not attempt to modify the task orders to require payment only for the courses performed until the completion of the second ordering period. See Dkt. No. 12-1 ¶ 22. Even in the final task order, the Government orders one lot at a price of $310,576, leaving uncertain the Army's position on course scheduling. See Compl. at Ex. E.

In short, the parties' dispute over terms such as "LO," "funded," and "obligated" is not "so glaring" that "to the reasonable contractor [they would be] apparent on the face of the contract." Jay Cashman, 88 Fed. Cl. at 309; see also Fort Vancouver Plywood Co. v. United States, 860 F.2d 409, 414 (Fed. Cir. 1988). Consequently, the Court disagrees with the Government's assertion that JKB had an obligation to clarify these latent ambiguities. JKB does not bear the burden of interpreting a contract correctly, only of interpreting it reasonably. The Court finds that both JKB and the Government's interpretations are tenable. Accordingly, the Government's motion to dismiss is DENIED.

## II.    Motion for Summary Judgment

### A.    Standard of Review

Summary judgment is appropriate when there are no genuine issues of material fact in dispute, and the moving party is entitled to judgment as a matter of law. See INSLAW,

Inc. v. United States, 35 Fed. Cl. 295, 303 (1996); see also RCFC 56(c). "Material" facts are those that have the potential to significantly affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is "genuine" when a reasonable trier of fact could find in favor of the non-moving party based on the evidence presented. Id. In reviewing the evidence, the Court resolves all factual doubts and draws all justifiable inferences in favor of the non-movant. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587–88 (1986) (citation omitted); Anderson, 477 U.S. at 255.

Issues of contract interpretation are typically a question of law and resolved through summary judgment. See, e.g., NVT Techs., 370 F.3d at 1159; Northrop Grumman Computing Sys., Inc. v. United States, 93 Fed. Cl. 144, 148 (2010). This is particularly true when the contract is clear and unambiguous on its face. See id.; CW Gov't Travel, 63 Fed. Cl. at 390. However, a contract that is susceptible to more than one reasonable interpretation may be considered ambiguous. See CW Gov't Travel, 63 Fed. Cl. at 390 (citing Cmty. Heating & Plumbing Co. v. Kelso, 987 F.2d 1575, 1579 (Fed. Cir. 1993)). "To the extent that the contract terms are ambiguous, requiring weighing of external evidence, the matter is not amenable to summary resolution." Beta Sys., Inc. v. United States, 838 F.2d 1179, 1183 (Fed. Cir. 1988).

### B.  Summary Judgment is Not Appropriate

The Government also argues that summary judgment is appropriate in this case. As discussed above, each party is confident in the facts it presents, but just as vigorously challenge the facts underlying the other party's claims. For example, in its opposition brief JKB took issue with 23 of the 49 facts relied upon by the Government in its motion to dismiss. See Dkt. No. 12 at 7–13.

The Government insists it is an "undisputed fact" that the contract does not require the Army to pay the amount quoted in the task orders. Dkt. No. 17 at 17. In support, the Government looks to JKB's invoices during the first ordering period which charged the Army for one lot at a unit price of $21,240 (the cost of one class). See Dkt. No. 9 at 32. This, the Government concludes, establishes that JKB clearly understood the term lot to represent one course. See id. The Government also submits the declaration of the contracting officer's representative. Dkt. No. 9-1. She concludes that JKB's failure to submit invoices for the unpaid courses until June 2018 demonstrates that JKB only expected payment for its actual performance. See Dkt. No. 9-1 ¶ 16.

JKB counters that this is a factual dispute and the Court must draw any inferences in its favor. JKB submits the declaration of its president, James K. Bailey. Dkt. No. 12-1. While Mr. Bailey admits that he did not send the invoices for unordered classes until June 25, 2018, he insists this does not establish that JKB did not expect payment for 14 classes. See Dkt. No. 12-1 ¶ 22. Rather, Mr. Bailey argues that as early as March 2016, JKB informed the Army the contract entitled it to payment for 14 courses. See Dkt. No. 12-1

¶ 23 (describing a conversation between Mr. Bailey and the contracting officer).  Mr. Bailey also details three emails to the Army requesting payment for 14 classes.  See id. ¶ 24.  According to Mr. Bailey, this conversation and these emails justified his delay in sending the unordered class invoices until the Army attempted to close out the task orders in June 2018.  See id. ¶¶ 10–12, 28–29.

After examining the contract and task orders, the Court finds each party's interpretation of the provisions to be problematic as a basis for summary judgment.  Indeed, JKB's dispute with nearly half of the Government's "statement of facts" certainly suggests the existence of significant factual issues.  While the briefing has provided a useful summary of the parties' positions, the Court needs to weigh the evidence, make credibility determinations, and draw legitimate inferences from the facts.  Rather than deciding the case on a summary judgment motion, the Court finds that the "better course would be to proceed to a full trial."  Anderson, 477 U.S. at 255.

## Conclusion

For these reasons, the Government's motion to dismiss or, in the alternative, for summary judgment is DENIED.  Pursuant to Rule 12(a)(4)(A), the Government shall file its answer to JKB's complaint within 14 days, on or before May 19, 2020.

IT IS SO ORDERED.

s/ Thomas C. Wheeler
THOMAS C. WHEELER
Judge