# In the United States Court of Federal Claims

No. 19-1390C

(Filed: October 16, 2020)

```
*************************************  *
                                       *
JKB SOLUTIONS AND SERVICES, LLC,       *
                                       *
                Plaintiff,             *    Motion for Summary Judgment;
                                       *    Tucker Act; Breach of Contract; Task
v.                                     *    Order; Termination for Convenience;
                                       *    Partial Termination for Convenience;
THE UNITED STATES,                     *    Constructive Termination for
                                       *    Convenience; Termination for
                Defendant.             *    Convenience Damages.
                                       *
*************************************  *
```

*William A. Lascara*, with whom was *Bryan S. Peeples*, Pender & Coward, P.C., Virginia Beach, Virginia, for Plaintiff JKB Solutions and Services, LLC.

*Amanda L. Tantum*, with whom were *Robert E. Kirschman, Jr.*, Director, *Steven J. Gillingham*, Assistant Director, Commercial Litigation Branch, *Ethan P. Davis*, Acting Assistant Attorney General, U.S. Department of Justice, Washington, D.C., and *Major Nicole Kim*, Judge Advocate, U.S. Army Legal Services Agency, for Defendant.

OPINION AND ORDER

WHEELER, Judge.

Plaintiff JKB Solutions and Services, LLC and the U.S. Army Contracting Command-New Jersey entered into a three-year Indefinite Quantity/Indefinite Delivery contract for instructor services for the Operational Contract Support course, a class developed and managed by the United States Army Logistics University. Under the contract, the Army could request up to fourteen classes per ordering period; the contract covered three ordering periods.

The Army ordered and paid for nine courses the first ordering period, thirteen the second period, and eight the third period. JKB alleges that the Army was required to pay for fourteen courses per ordering period, regardless of how many it actually needed. The

Government, however, argues that it could order up to fourteen courses but was only required to pay for the courses JKB actually performed.  Even if the Army was required to order fourteen courses, the Government argues that the contract includes a termination for convenience clause, FAR 52.212-4, which limits JKB's recovery to termination for convenience costs.

Now before the Court is the Government's motion for summary judgment.  For the reasons discussed below, the Court GRANTS the Government's motion.

## Background

The Court previously provided a detailed history of the solicitation at issue in this case in its reported order denying the Government's motion to dismiss.  See JKB Sols. & Servs., LLC v. United States, 148 Fed. Cl. 93, 95–96 (2020).  Briefly, the solicitation was for JKB to provide the Army with instructors for its Operation Contract Support course.  Id. at 95.  The Army was to issue task orders for each one-year ordering period under the contract; the Army could order up to fourteen classes per ordering period.  Id.  JKB's contract with the Army incorporated various standard provisions of the Federal Acquisition Regulations ("FAR").  Dkt 1-2 at 1.  One such provision incorporated in the IDIQ contract relates to "Termination for the Government's convenience" and states that "[t]he Government reserves the right to terminate the contract, or any part hereof, for its sole convenience."  FAR 52.212-4(l).  Ultimately, the Government did not order the full fourteen classes in any of the ordering periods: in period one it ordered nine courses, in period two it ordered thirteen, and in period three it ordered eight.  Dkt. 31 at 9.  However, although the Army did not order the full fourteen courses during any of the ordering periods, it never explicitly terminated the task orders or the contract for convenience.

JKB filed its complaint in this Court on September 11, 2019.  Dkt. 1.  In its complaint, JKB alleged that the Army breached its contractual duty when it refused to pay for fourteen classes for each ordering period.  Id. at ¶¶ 5–15.  On January 16, 2020, the Government moved to dismiss the complaint for failure to state a claim upon which relief may be granted, arguing that the contract's language made clear JKB would only be paid for services that were actually provided or, in the alternative, for summary judgment.  Dkt. No. 9.  The Government disagreed about how many courses it was contractually required to order per period.  The Court held that the task orders contained both patent and latent ambiguities as to whether the Army was required to pay for 14 courses per ordering period and denied the Government's motion.  JKB Sols. & Servs., 148 Fed. Cl. at 98–99.

After the Court addressed the Government's motion to dismiss, the parties filed a joint preliminary status report on June 29, 2020.  Dkt. 20.  In the joint status report, the Government argued that the Court should find a constructive termination for convenience and limit JKB's recovery to termination for convenience costs.  Dkt. 20 at 3 (relying on G.L. Christian & Assoc. v. United States, 312 F.2d 418 (Ct. Cl. 1963).  The Court then

held a telephonic conference on August 11, 2020, where the parties agreed to an expedited briefing on the Government's motion for summary judgment.  Dkt. 30.

The Government filed its motion for summary judgment on August 25, 2020.  Dkt. 31.  JKB then filed its response and a cross-motion for summary judgment on September 8, 2020.  Dkt. 34.  In response, the Government requested that the Court stay the deadline for its response to JKB's cross-motion for summary judgment until the Court ruled upon the Government's pending motion for summary judgment.  Dkt. 35.  The Court granted the Government's request.  Dkt. 36.  On September 23, 2020, the Government filed its reply in support of its motion for summary judgment.  Dkt. 39.  The Government's motion for summary judgment is now fully briefed and ripe for decision.

## Standard of Review

Summary judgment is appropriate where the evidence demonstrates that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Rules of the United States Court of Federal Claims ("RCFC") 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–49 (1986); Casitas Mun. Water Dist. v. United States, 543 F.3d 1276, 1283 (Fed. Cir. 2008).  The moving party bears the initial burden of showing that there exists no genuine dispute as to any material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Once that burden is met, the onus shifts to the non-movant to identify evidence demonstrating a dispute over a material fact that would allow a reasonable finder of fact to rule in its favor.  See Anderson, 477 U.S. at 256.

Summary judgment will not be granted if the "evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party."  Anderson, 477 U.S. at 248.  However, when "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  Scott v. Harris, 550 U.S. 372, 380 (2007) (quoting Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

## Discussion

The contract between JKB and the Army incorporated a termination for convenience clause.  The Army constructively terminated each task order for convenience.  Therefore, JKB may only recover its termination for convenience costs, but it neither alleged these costs in its complaint nor subsequently provided any evidence that it suffered them.  Accordingly, the Government is entitled to summary judgment.

I.   The Army Exercised the Termination for Convenience Clause Contained in its Contract with JKB

When a party to a contract fails to perform or improperly repudiates its obligations, the nonbreaching party is entitled to damages. See Best Foam Fabricators, Inc. v. United States, 38 Fed. Cl. 627, 637 (1997). However, the Government has more rights, and government contractors have correspondingly fewer rights, than do parties to an ordinary contract. One of the Government's heightened rights is the power to terminate a contract for convenience. This power is codified in FAR 52.212-4(l), which provides in relevant part:

> The Government reserves the right to terminate this contract, or any part hereof, for its sole convenience. . . . Subject to the terms of this contract, the Contractor shall be paid a percentage of the contract price reflecting the percentage of the work performed prior to the notice of termination, plus reasonable charges the Contractor can demonstrate to the satisfaction of the Government using its standard record keeping system, have resulted from the termination. The Contractor shall not be required to comply with the cost accounting standards or contract cost principles for this purpose. . . . The Contractor shall not be paid for any work performed or costs incurred which reasonably could have been avoided.

Thus, FAR 52.212-4(l) allows the Government to terminate a contract without having to pay ordinary expectation damages; instead a government contractor is only entitled to payment for work already completed and any costs that it incurred as a direct result of the termination. "[T]he government is entitled to considerable latitude in making such a decision to terminate." Custom Printing Co. v. United States, 51 Fed. Cl. 729, 733–34 (2002).

JKB argues that FAR 52.212-4(l) is inapplicable in this case because that section of the FAR deals with commercial item contracts, and this contract between JKB and the Government is a service contract. Dkt. 34 at 20. JKB is mistaken. It is true that FAR 52.212-4 does have the heading "Contract Terms and Conditions—Commercial Items." However, as the Government correctly notes, nothing in the FAR limits the applicability of Section 52.212-4(l) to commercial item contracts. Dkt. 31 at 13. To allow JKB to escape the application of the termination for convenience clause, which was incorporated by explicit reference into its contract with the Army, simply because the clause was initially envisioned as a provision in a different sort of contract would be to deny the Government the benefit of its bargain. The Court will not do this.

The termination for convenience clause contained in FAR 52.212-4(l) does not leave government contractors totally helpless in the face of a termination for convenience. First, the contract at issue must actually contain a termination for convenience clause in

4

order for the Government to be able to invoke it.  See Praecomm, Inc. v. United States, 78 Fed. Cl. 5, 11 (2007).  Even if the contract at issue contains a termination for convenience clause, the Government's decision to terminate could still potentially qualify as a breach of the contract.  However, a termination for convenience constitutes a breach of contract only in two "very limited circumstances": "when 'the agency (1) terminates the contract in bad faith or (2) abuses its discretion in its decision to terminate the contract.'" TigerSwan, Inc. v. United States, 118 Fed. Cl. 447, 451 (2014) (quoting Tigerswan, Inc. v. United States, 110 Fed. Cl. 336, 345 (2013)).  Moreover, if a "contract contains a termination for convenience clause and the contracting officer could have invoked the clause instead of terminating, rescinding or repudiating the contract on some other invalid basis," this Court "will constructively invoke the clause to retroactively justify the government's actions, avoid breach, and limit liability."  Praecomm, 78 Fed. Cl. at 11 (quoting Best Foam Fabricators, Inc., 38 Fed. Cl. at 638).

Therefore, if (1) the contract between JKB and the Army contained a termination for convenience clause, (2) the Army did not terminate the contract in bad faith or abuse its discretion in doing so, and (3) the contracting officer could have elected to terminate the contract—or, as relevant here, the task orders issued pursuant to the contract—for convenience, then the Government is not in breach.  Each of these conditions is met in this case.

First, the contract between JKB and the Army did contain a termination for convenience clause.  The contract explicitly states that it "Incorporates By Reference FAR 52.212-4."  Dkt. 1-2 at 1.  As the Government notes, the relevant question in this case is whether each task order issued pursuant to the contract between JKB and the Army also included a termination for convenience clause.  See Dkt. 39 at 14.  They did.  The contract said that "[a]ll . . . task orders are subject to the terms of this contract."  Id. at 33.  Therefore, not only the contract, but also all of the task orders issued pursuant to it, included the termination for convenience clause from FAR 52.212-4(l).

Second, there is no indication that the Army terminated the task orders in bad faith, and its decision to do so was not an abuse of discretion.  As a starting point, the questions of whether the Army terminated the contract in bad faith or its decision to do so was an abuse of discretion presuppose that there was actually a decision to terminate the contract for convenience.  However, here the Court is constructively invoking the termination for convenience clause; the Army never explicitly invoked it, so it cannot have done so in bad faith or abused its discretion in having done so.  Even assuming the contracting officer did decide to terminate the contract for convenience, though, there was no bad faith or abuse of discretion.  In evaluating these questions, this Court uses four factors established by the Federal Circuit: "(1) subjective bad faith on the part of the CO, (2) the reasonableness of the decision, (3) the amount of discretion delegated to the CO, and (4) any violations of an applicable statute or regulation."  TigerSwan, 118 Fed. Cl. at 451 (citing Keco Indus., Inc. v. United States, 492 F.2d 1200, 1203–04 (Ct. Cl. 1974), abrogated on other grounds by

5

Impresa Construzioni Geom. Domenico Garufi v. United States, 238 F.3d 1324, 1331-33 (Fed. Cir. 2001)).

None of these four factors weigh against the Army's decision to terminate for convenience in this case. JKB does not allege that the contracting officer acted in bad faith; nor is there any evidence for this proposition. See Dkt. 34 at 14–15. Nor is there any indication that the decision to terminate the contract for convenience was unreasonable. For instance, JKB acknowledges that the reason the Army did not order fourteen classes per ordering period was that it was able to use its own personnel to teach some of the classes. Dkt. 34 at 11–12. The Army's decision to use its own employees to teach these classes, rather than contract them out to an outside vendor, was reasonable. As explained above, the contract contained a termination for convenience clause, and the contracting officer had the authority to terminate for convenience. JKB insists that there was no termination, but this does not mean that the contracting officer did not have the authority to terminate. See, e.g., Dkt. 34 at 17. Lastly, JKB does not allege that a termination for convenience would have violated any applicable statute or regulation.

Third, the contracting officer could have chosen to invoke the termination for convenience clause when it became clear that, for each task order, the Army required fewer classes than it originally anticipated. The Court agrees with the Government that task orders, like other agreements between the Government and a contractor, may be partially terminated for convenience. See Dkt. 39 at 14; see also Nesbitt v. United States, 345 F.2d 583, 585–86 (Ct. Cl. 1965); Praecomm, 78 Fed. Cl. at 12. This Court has previously found that when the Government no longer requires all of the services it has ordered, "the deletion of work . . . resulted in a [constructive] termination for convenience." Praecomm, 78 Fed. Cl. at 12. The same principles apply here. The Army could have partially terminated the task orders it issued to JKB when it became clear that it did not require JKB to teach fourteen classes per order. The Court therefore constructively invokes the termination for convenience clause for each of the three task orders.

For these reasons, JKB's contract with the Army, and the subsequent task orders that arose out of it, contained a termination for convenience clause that the Court "constructively invoke[s] . . . to retroactively . . . limit liability." Id. at 11.

II.     JKB May Only Recover Termination for Convenience Costs

The termination for convenience clause incorporated into the contract between JKB and the Government stated that in the event the Army chose to terminate the contract for convenience, JKB would "be paid a percentage of the contract price reflecting the percentage of the work performed prior to the notice of termination, plus reasonable charges [JKB could] demonstrate . . . ha[d] resulted from the termination." FAR 52.212–4(l). The Government notes in its motion for summary judgment that "JKB has provided no evidence of costs related to termination of the task orders, let alone presented a claim

for termination for convenience costs to a contracting officer." Dkt. 31 at 17. JKB does not dispute this characterization. Additionally, JKB did not include a claim for termination for convenience costs in its complaint, and did not raise the issue of termination for convenience costs in its cross-motion for summary judgment. JKB is not entitled to recover any money from the Government, because it is only entitled to termination for convenience costs, and has failed to demonstrate, or even allege, that it incurred any of these costs.

## Conclusion

For these reasons, the Government's motion for summary judgment is GRANTED. Additionally, JKB's cross-motion for summary judgment is DENIED as moot. The Clerk of the Court is directed to enter judgment in favor of the Government. No costs.

IT IS SO ORDERED.

s/ Thomas C. Wheeler<br>
THOMAS C. WHEELER<br>
Judge